J-S21030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.R., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1850 WDA 2017 |

Appeal from the Order October 26, 2017
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): No. 044 of 2017

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 12, 2018**

D.R. (Father) appeals from the orphans' court order involuntarily terminating his parental rights to his daughter, S.R. (Child).  The petition was filed by Child's current caregivers and legal custodians, A.R. (Great-Aunt) and J.R. (Great-Uncle) (collectively, Petitioners),[1] pursuant to 23 Pa.C.S.A. §

---

[1] Petitioners satisfied the requirements of 23 Pa.C.S.A. § 2512(a)(3), regarding who may file a petition for involuntary termination of parental rights.  Section 2512(a)(3) provides that a petition to terminate parental rights with respect to a child under the age of 18 years may be filed by "[t]he individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt)."  23 Pa.C.S.A. § 2512(a)(3).  As noted, Petitioners had legal custody of Child, and the record reflects that on May 24, 2017, Petitioners filed a report of intention to adopt Child.

2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-

2938.[2]  For the reasons that follow, we affirm.

The orphans' court summarized the relevant factual and procedural

history of this case as follows:

> [Child] was born [i]n December [of] 2003.  Thereafter, the minor child lived exclusively with Father and biological mother, R.R. ("Mother").  During the time period of approximately 2009 to 2012, the Westmoreland County Children's Bureau was involved with Mother and Father, providing general protective services for a time period of approximately three (3) years.  Father alleges that this was caused primarily by Mother's drug abuse and related criminal issues.
>
> Petitioners in this case are Maternal Great-Aunt and Great-Uncle of the minor child, A.R. and J.R. ("Petitioners").  On October 15, 2012, A.R. was granted emergency custody of the minor child by the Honorable Christopher A. Feliciani at Case No. 2223 of 2012-D.  Petitioners were prompted to obtain custody based on allegations of abuse reported by the minor child to her school guidance counselor, including allegations of physical abuse, withholding of food, severe neglect and unsuitable housing, truancy, and Mother's drug abuse.  Father denies any drug use, although he has refused drug testing by the [c]ourts and the Children's Bureau on three (3) separate occasions.  An October 26, 2012 Order of Court provided for Mother and Father to have supervised visitation through the Children's Bureau, and ordered Mother and Father to obtain drug and alcohol evaluations and follow all recommended treatment.  On January 3, 2013, [Petitioners were] granted sole legal and primary physical custody

---

[2] The October 26, 2017 termination order also terminated the parental rights of R.R. (Mother).  On April 10, 2018, Mother's counsel filed with this Court an application to dismiss Mother from this appeal.  Mother did not file a brief in connection with this appeal, nor did she file a separate appeal.  Accordingly, to the extent that Mother could be deemed to have any involvement in this appeal by virtue of being a subject of the termination order, we grant the application to dismiss.

of [Child], with supervised visitation provided to Mother and Father, through JusticeWorks YouthCare.

Father provided no evidence that a drug and alcohol evaluation was ever completed by himself or Mother. Since 2013, Father has failed to arrange for visits with [Child], either through JusticeWorks per the January 3, 2013 Order of Court, or to attempt to derive some alternative arrangement with Petitioners. Father stated that he was unable to afford supervised visitation through JusticeWorks YouthCare. Father has never petitioned to modify the January 3, 2017 Order of Court. The last contact Father has had with [Child] occurred in August of 2015. Father arrived unannounced at Petitioners' home, bringing with him a bicycle he had purchased for the minor child, and then proceeded to speak with [Child] for approximately ten minutes.

From 2012 through 2015, [Child] would speak on the phone with Father, however discussions were characterized as inappropriate by Petitioners, and included topics such as Mother's drug use, criticism of the child's diet and weight, and Father's housing instability. Additionally, Great-Aunt indicated that initially the minor child would attempt at least once per month to reach out by phone to Mother and Father, however many of these calls were not returned, and after a few years, [Child] eventually stopped calling. Great-Uncle reports that the last phone call between [Child] and Father occurred in approximately September of 2015. Father testified that he has not had a phone call with [Child] since 2016, despite attempts to call the child's personal mobile phone.

Orphans' Court Opinion, 12/20/17, at 2-4 (footnote omitted).

On April 20, 2017, Petitioners filed a petition to involuntarily terminate Father's parental rights to Child. The orphans' court conducted a termination hearing on August 17, 2017, and October 26, 2017,[3] during which Petitioners

---

[3] By order of court dated June 21, 2017, Diane Murphy, Esquire was appointed to serve as both Child's legal counsel and guardian *ad litem*. At the termination hearing, Attorney Murphy stated that she believed terminating Father's parental rights was in Child's best interests. *See* N.T., 10/26/17, at 70-72. Moreover, she stated that Child wanted Father's parental rights

- 3 -

testified on their own behalf and presented the testimony of Dawn Smitley, a licensed clinical social worker who conducted a home study evaluation. Father also testified on his own behalf. At the conclusion of the hearing, the orphans' court delivered its decision from the bench, ordering that Father's parental rights to Child be terminated. It entered the written order on the same date. Father filed a timely notice of appeal, along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4] The orphans' court issued its opinion pursuant to Rule 1925(a) on December 20, 2017.

On appeal, Father raises the following issues for our review:

1. Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.A. [§] 2511(a)(1), [(2), (5), and (8)]?

---

terminated. *Id.* at 72. Based upon this testimony, we can perceive of no conflict between Child's legal and best interests. Hence, the trial court was not required in this case to appoint counsel, separate from the guardian *ad litem*, to represent Child's legal interests. *See In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (holding that the appointment of legal counsel to represent a child is mandatory in a contested termination proceeding under 23 Pa.C.S.A. § 2313(a)).

[4] Generally, a party must file his or her notice of appeal within thirty days after the entry of the order being appealed. Pa.R.A.P. 903(a). Here, thirty days after October 26, 2017, was November 25, 2017. Because November 25, 2017, was a Saturday, Father timely filed his notice of appeal on Monday, November 27, 2017. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

2. Did the [orphans'] court err in terminating Father's parental rights despite evidence that there existed environmental factor[s] such as inadequate housing, furnishings, income, clothing, and medical care that were beyond his control?

Father's Brief at 4 (suggested answers omitted).

We review an appeal from the termination of parental rights in accordance with the following standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

- 5 -

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). This Court need only agree with the orphans' court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we focus our analysis on Section 2511(a)(1) and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > . . .

- 6 -

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

As it relates to Section 2511(a)(1), the pertinent inquiry for our review is as follows:

To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa. Super. 1999) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998)) (internal citations omitted). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004). Additionally, to the extent that the orphans' court based its decision to terminate parental

rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). In *In re C.M.S.*, we explained, "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the orphans' court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d at 91).

Instantly, the orphans' court explained:

[Child] has been in the custody of the Petitioners since October 12, 2012. The petition to terminate Father's parental rights was filed on April 2[0], 2017. For over four (4) years, Petitioners have been the sole providers for the minor child. They have performed all parental duties necessary for [Child] to remain a healthy and thriving child. As described above, Petitioners provide all financial, physical, and emotional support for the minor child, and have done so since October of 2012.

- 8 -

> It is undisputed that Father has had no phone contact with [Child] since at least 2016, and no in-person contact since August of 2015. Between August of 2015 and the April 2[0], 2017 . . . filing of the Petition for Termination of Parental Rights by Petitioners, Father admittedly failed to perform any parental duties whatsoever for [Child]. He provided no support for the minor child in any way, including providing financially for the child, performing any parental duties including providing shelter, clothing, medical care, or emotional support. This time period far exceeds the six (6) months necessary under 23 Pa.C.S.A. § 2511(a)(1) to provide a basis for termination. For this reason, termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1) is proper.

Orphans' Court Opinion, 12/20/17, at 7.

Father argues that environmental factors existed that were "beyond his control," and thus asserts that he did not act willfully in failing to remedy the conditions that led to Child's removal. Father's Brief at 9-11. Specifically, Father contends that he could not afford an attorney "to aid him through the custody case" and was never "advised of resources that he could pursue to help pay" for visits with Child. *Id.*

Our review of the record supports the orphans' court's findings. Petitioners obtained custody of Child based upon concerns regarding physical abuse, severe neglect, and unsuitable housing. N.T., 10/26/17, at 7. Father has done very little to fulfill his parental duties since his last contact with Child in August 2015. Great-Aunt testified that when she initially obtained custody of Child in October 2012, Father had two visits with Child. However, since 2013, Father has not contacted Great-Aunt for visits, either at Petitioners' home or through Justice Works. *Id.* at 8. Father never made phone calls to Child or financially supported Child in any way. *Id.* at 10-11. Moreover,

- 9 -

Father testified at the termination hearing that he does not have suitable housing for Child, and that there was "no need" for him to obtain more appropriate housing. *Id.* at 37. By the termination hearing, Child had waited over four years for a permanent and stable home. Based upon Father's absence from Child's life, his relationship with Child, if any, lacks security, stability and safety.

Likewise, we reject Father's claims that the trial court erred in terminating his parental rights because environmental factors out of his control, *i.e.*, financial hardship, prevented him from parenting Child. The orphans' court addressed Father's challenge:

> Father maintains that he has been unable to obtain representation since the inception of the custody litigation in 2012 due to his financial circumstances, which were compounded by a house fire in 2015, as well as his attempts to support Mother throughout various terms of incarceration related to her criminal and drug issues. Despite this, Father also testified that he is able to eat expensive seafood meals every weekend, and that he is and has always been able to provide anything the minor child may need financially through his eBay and PayPal accounts. Father indicates that over the years that the minor child has lived with Petitioners, he purchased for her a bicycle, a Kindle tablet, yearly Easter baskets and Thanksgiving presents, two laptop computers, and a $2,500.00 diamond ring, among other things. He also testified that he did not make any serious attempt to attain representation, either privately or through the Westmoreland County pro bono office, at any time between 2012 and 2017. . . .

Orphans' Court Opinion, 12/20/17, at 4-5.

Our review indicates that the orphans' court's decision to terminate Father's parental rights was not based on environmental factors beyond his control. Rather, the orphans' court terminated Father's rights because he was

completely uninvolved in Child's life. Father did not make any efforts to contact Child, either by visitation, telephone, or sending letters or cards. The record reveals that Petitioners have performed all parental duties for Child since they assumed custody of her in October 2012. N.T., 10/26/17, at 11. Petitioners provide all financial, physical, and emotional support for Child, and Child is thriving in their care. *Id.*

"Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *B., N.M.*, 856 A.2d at 855. Here, Father's conduct evidenced to the court a lack of interest in Child and a failure to perform affirmative parental duties. Because Father failed to act affirmatively to maintain his relationship with Child, even under allegedly difficult circumstances, we find that Petitioners proved the statutory elements for termination under Section 2511(a)(1). *See id.* (explaining that a parent "must exercise reasonable firmness in resisting the obstacles" that limit his or her ability to maintain a parent-child relationship).

Thus, the record confirms that Father refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition. It was within the orphans' court's discretion to accept the testimony of Petitioners, and to conclude that Father made no effort to contact Child during the relevant six months. *See In re T.S.M.*, 71 A.3d at 267. Accordingly, we discern no abuse of discretion.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Instantly, Father makes no effort to challenge the termination of his parental rights pursuant to Section 2511(b) in the Argument section of his brief, nor did he include any such challenge in his Statement of Questions Involved. We thus conclude that Father waived his challenge with regard to Section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (concluding that appellant waived her challenge in regard to section

2511(b) by failing to include it in her concise statement and statement of questions involved). However, even if Father had preserved such a challenge, we would conclude that the orphans' court's determination, *i.e.*, that the termination of Father's parental rights was in Child's best interest, **see** Orphans' Court Opinion, 12/20/17, at 10-11, is supported by the record and free of legal error. **See In re T.S.M.**, 71 A.3d at 267.

For the above reasons, we find that the orphans' court properly granted Petitioners' petition to terminate Father's parental rights to Child.

Order affirmed. Application to Dismiss granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/12/2018